IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SAIDZHON SAIDOV,** | | **CIVIL ACTION** |
| **Petitioner,** | | |
| **v.** | | |
| **JAMAL L. JAMISON, JOHN RIFE** | | **NO.  26-1699** |
| **Respondents.** | | |

**HODGE, J.**                                                                                    **March 20, 2026**

**<u>MEMORANDUM</u>**

Petitioner Saidzhon Saidov ("Petitioner" or "Mr. Saidov") is yet another of the numerous individuals who, pursuant to the new decision by the Bureau of Immigration Appeals ("BIA"), has been subjected to mandatory detention without the opportunity for an individualized hearing under the Immigration and Nationality Act ("INA") § 235, 8 U.S.C. § 1225(b)(2). BIA's interpretation of that section would permit it to treat an immigrant who was inspected at the border and paroled into the United States "as seeking admission" even if the person arrived in the country years ago. Such treatment results in detention without any hearing. This Court again joins with the hundreds of decisions rejecting BIA's analysis, and grants Mr. Saidov's petition for a writ of habeas corpus (ECF No. 1 (the "Petition")) and orders his immediate release.[1]

---

[1] The Court may decide the issues raised in the Petition without a hearing, as courts have done in similar recent cases, and as the parties have stipulated to. (ECF No. 6); *see Rodriguez Pereira v. O'Neill*, No. 25-cv-6543, 2025 WL 3516665 (E.D. Pa. Dec. 8, 2025); *Gramajo De Leon v. Jamison*, No. 25-cv-7199, 2025 WL 3724604 (E.D. Pa. Dec. 23, 2025).

## I.    PROCEDURAL BACKGROUND[2]

Mr. Saidov, a native of Tajikistan and citizen of Russia, entered the United States on July 5, 2022, at the San Ysidro port of entry. (ECF No. 1 ¶ 2.) He was encountered and detained by U.S. Customs and Border Protection ("CBP"). (*Id.*) At the time, Mr. Saidov did not possess valid entry documents, and CBP therefore deemed him inadmissible under 8 U.S.C § 1182(a)(7)(A)(i)(I). (ECF No. 7 at 4.) He was granted permission to enter the United States on a temporary basis and given humanitarian parole under 8 U.S.C. § 1182(d)(5). (ECF No. 1 ¶ 3.) Since entering the United States, Mr. Saidov has submitted a timely asylum application, attended regular check-ins with Immigration and Customs Enforcement ("ICE"), obtained employment authorization, and otherwise remained a law abiding and productive member of society. (*Id.* ¶ 4.)

On March 13, 2026, Mr. Saidov was stopped by ICE officers while shopping with his wife. (*Id.* ¶ 5.) ICE officers took Mr. Saidov into custody that day and detained him under 8 U.S.C. § 1225(b)(2)(A). (*Id.* ¶ 5; ECF No. 7 at 4.) ICE initially transported Petitioner to the Federal Detention Center in Philadelphia (ECF No. 1 ¶ 10), but subsequently transferred Petitioner to Moshannon Valley Processing Center in the Western District of Pennsylvania on March 17, 2026 (ECF No. 7 at 4 n.3), prior to receiving notice of this Court's Order not to transfer him from the Eastern District of Pennsylvania, which was issued on March 16, 2026 (ECF No. 2).[3]

## II.    LEGAL STANDARD

A federal district court is authorized to grant a writ of habeas corpus under 28 U.S.C. § 2241 where the petitioner is "in custody under or by color of the authority of the United

---

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

[3] Although Petitioner has been transferred out of this district, this Court retains jurisdiction over the matter. *Anariba v. Dir. Hudson Cty. Corr. Ctr.*, 17 F.4th 434, 445–46 (3d Cir. 2021) ("When the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within

States . . ." The burden is on the petitioner to show that his confinement is unlawful. *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972).

### III.    DISCUSSION

Respondents assert that the Petition should be denied because (1) Mr. Saidov is lawfully detained pursuant to 8 U.S.C. § 1225(b)(2)(A); (2) his legal status as an inadmissible arriving alien subject to mandatory detention is changed neither by the grant of discretionary parole nor its later expiration; and (3) his detention does not violate constitutional due process.

#### A. Mr. Saidov Is Not Subject to Mandatory Detention Under 8 U.S.C. § 1225(b)(2)(A)

Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding . . . ." By contrast, 8 U.S.C. § 1226(a) "applies to aliens already present in the United States," *Jennings v. Rodriquez*, 583 U.S. 281, 303 (2018), and provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." The Attorney General "may release" noncitizens on "bond" or "conditional parole," except if they have committed any of the criminal offenses listed in Section 1226(c). 8 U.S.C. § 1226(a).

Reversing course, on July 8, 2025, DHS issued a policy instructing all ICE employees to consider anyone deemed inadmissible under § 1182(a)(6)(A)(i)—*i.e.,* all those who entered the United States without admission or inspection—to be subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and therefore ineligible to be released on bond. This policy was

---

its jurisdiction who has legal authority to effectuate the prisoner's release." (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004)).

subsequently enshrined in a September 5, 2025 decision by the BIA, which took the position that all non-citizens who are present in the United States without admission are subject to mandatory detention under Section 1225(b) and that an immigration judge has no authority to consider their bond requests. *Matter of Yajure Hurtado*, 29 I.&N. Dec. 216 (B.I.A. 2025).

As the Supreme Court has explained, "aliens *already in the country* pending the outcome of removal proceedings" may be detained pursuant to Section 1226(a). *Jennings*, 583 U.S. at 289 (emphasis added). By contrast, Section 1225(b) "applies primarily to aliens seeking entry into the United States." *Id.* at 297. Respondents assert that noncitizens like Petitioner who are already present within the United States are "applicants for admission" within the language of Section 1225(b)(2)(A). (ECF No. 7 at 5–7.) However, as my colleagues have reasoned, if the Court accepts Respondents' argument that Section 1225(b)(2)(A) applies to all "applicant[s] for admission," then there was no need for Congress to specify that Section 1225(b)(2)(A) would apply to "alien[s] seeking admission." *Demirel v. Fed. Det. Ctr. Philadelphia*, No. 25-cv-5488, 2025 WL 3218243, at *4 (E.D. Pa. Nov. 18, 2025). This Court must grant "every clause and word of a statute . . . meaning" and render "no clause, sentence, or word . . . superfluous, void, or insignificant." *United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023); *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001). If this Court adopted the Government's reading of Section 1225(b)(2)(A) to apply to "all applicant[s] for admission," it would render the phrase "seeking admission" superfluous. However, the text "seeking admission" is not unnecessary and, thus, shall not be ignored by this Court. Thus, Section 1225(b)(2)(A) is inapplicable to Petitioner on this basis.

Respondents assert that the present case is an "Arriving Alien" case, which they define as "individuals who presented at a port of entry without valid entry documents, were paroled into the country under 8 U.S.C. § 1182(d)(5)(A), and, after a passage of time, recently detained under 8

U.S.C. § 1225(b)(2)(A)." (ECF No. 7 at 1, 4.) While Respondents distinguish this category of cases from "Hurtado cases," they note that both categories share the same authority for mandatory detention under 8 U.S.C. § 1225(b)(2)(A). (*Id.* at 3.) Thus, the Court's statutory analysis above applies in this so-called "Arriving Alien" category of cases.

In addition to their statutory argument, Respondents point to Respondent's Exhibit 1, which is a Notice to Appear charging Petitioner as an "arriving alien" as opposed to "an alien present in the United States who has not been admitted or paroled." (*Id.* at 4; ECF No. 7-1 at 2.) This Notice to Appear is dated July 5, 2022, and the city and state is listed as San Ysidro, California. (ECF No. 7-1 at 2.) The document is dated prior to the date of entry in Petitioner's I-94 (ECF No. 7-2). It thus appears that this document was created after Mr. Saidov presented himself to the CBP port of entry, and prior to his discretionary parole under 8 U.S.C. § 1182(d)(5)(A). At the time this Notice to Appear was created, Petitioner was an arriving alien, detained at a CBP port of entry, and would be subject to mandatory detention under § 1225(b)(2)(A). Petitioner does not dispute that he was subject to § 1225(b) mandatory detention at that time. (ECF No. 1 ¶ 2.)

Mr. Saidov does not contend that the grant of discretionary parole deemed him admitted. Rather, he asserts, and the Court agrees, that the grant of discretionary parole and Mr. Saidov's release from CBP custody in July 2022 means that he is no longer "seeking admission" within the meaning of § 1225(b). He therefore cannot be detained absent a bond hearing. *See, e.g.*, *Marcano v. Jamison*, 2026 WL 196504, at *3 (E.D. Pa. Jan. 26, 2025).[4]

---

[4] Respondents further assert that Mr. Saidov's parole was not revoked, but rather terminated automatically, and thus it was not required to provide Mr. Saidov with notice of revocation of parole. (ECF No. 7 at 10.) The Court lacks sufficient evidence to determine whether Mr. Saidov's parole terminated automatically. For instance, in *Sadykov v. Rose*, 26-cv-00086 (E.D. Pa.), the petitioner similarly argued his parole was revoked without notice, and his I-94

### B.  Mr. Saidov's Detention Violates Due Process

The Fifth Amendment's Due Process Clause prevents the Government from depriving any person of "life, liberty, or property, without due process of law." The "Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To determine whether a government action violates due process, courts apply the balancing test outlined in *Mathews v. Eldridge*, which weighs: (1) the private interest implicated by the government action; (2) the risk of an erroneous deprivation and the probable value of additional safeguards; and (3) the Government's interest, including administrative burdens of additional procedures. 424 U.S. 319, 334 (1976).

All three *Mathews* factors weigh in favor of Mr. Saidov. In this instance, Mr. Saidov has a strong private interest in his personal liberty. The failure of the Government to afford him *any* individualized determination regarding whether he posed a danger or flight risk after living in this country for over three years with his wife and possessing no criminal record poses a high risk of erroneous deprivation of his rights, while a bond hearing imposes minimal administrative burden. Therefore, the application of the *Mathews* factors and constitutional due process necessitated a bond hearing prior to his detention on March 13, 2026. Because that hearing did not occur, Petitioner should not now be in custody.[5]

---

contained an "Admit Until Date" of December 20, 2023. See *Sadykov*, 26-cv-00086, Dkt. No. 1-1 at 6. The Government's response in that case did not assert that the petitioner's parole was automatically revoked. See *Sadykov*, 26-cv00086, Dkt. No. 5.

[5] In light of this Court's ruling that Petitioner's habeas petition is granted based on violation of the INA, 8 U.S.C. § 1226(a) (Count V) and violation of the Fifth Amendment Right to Substantive Due Process (Count III), this Court declines to address Mr. Saidov's claims for violation of the Administrative Procedures Act, 5 U.S.C. § 701, *et seq.* (Counts I and II) or violation of the *Accardi* Doctrine pursuant to *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954) (Count IV).

## IV.    CONCLUSION

For the aforementioned reasons, Petitioner's detention without a bond hearing offends the INA and the Due Process Clause of the Fifth Amendment. Therefore, this Court grants Mr. Saidov's Petition, orders his immediate release, permanently enjoins the Government from re-detaining him under Section 1225(b)(2)(A), and temporarily enjoins the Government from re-detaining him under Section 1226(a) for at least seven days following his release. An appropriate Order follows.

BY THE COURT:

**/s/ Hon. Kelley B. Hodge**

**HODGE, KELLEY B., J.**